# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| GH AMERICA ENERGY LLC, <br><br> *Plaintiffs,* <br><br> v. <br><br> ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.; PABLO VEGAS, Chief Executive Officer of the ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.; PAUL FOSTER, BILL FLORES, CARLOS AGUILAR, LINDA CAPUANO, LORI COBOS, JULIE ENGLAND, ROBERT FLEXON, THOMAS GLEESON, PEGGY HEEG, COURTNEY HJALTMAN, and JOHN SWAINSON, Members of the Board of Directors of the RELIABILITY COUNCIL OF TEXAS, INC., <br> *Defendants,* <br><br> And <br><br> KEN PAXTON, in his official capacity as the Attorney General of Texas, <br><br> [Proposed] *Intervenor-Defendant*. | Case No. 1:24-cv-00648 |

**ATTORNEY GENERAL KEN PAXTON'S UNOPPOSED MOTION TO INTERVENE**

Ken Paxton, in his official capacity as the Attorney General of Texas ("the Texas AG") files this Motion to Intervene and respectfully shows the following. The Texas AG may intervene in this matter for two reasons:

*First*, Federal Rules of Civil Procedure 5.1 and 24(a) each grant the Texas AG an unconditional right to intervene. Rule 5.1 provides that when the constitutionality of a state statute has been challenged, the state attorney general must be notified and given the opportunity to

intervene. Fed. R. Civ. P. 5.1. Rule 24(a) requires a court to "permit anyone to intervene who . . . is given an unconditional right to intervene by federal statute," or when there exists "an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a). And the recent Supreme Court decision in *Berger v. North Carolina State Conference of the NAACP* makes clear that multiple state entities may intervene to represent state interests in a case because "no one questions that States possess a legitimate interest in enforcing their own statutes." 597 U.S. 179, 191 (2022) (cleaned up).

**Second**, *assuming arguendo* that this Court does not believe that the Texas AG has a right to intervene, the court may still permit the Texas AG to intervene. A court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24 (b)(1)(B). A court may further permit "a state governmental agency or officer to intervene if a party's claim or defense is based on (A) a statute or executive order administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order." Fed. R. Civ. P. 24(b)(2).

Because the Texas AG meets the requirements for mandatory intervention, or at a minimum for permissive intervention, the Texas AG respectfully moves this Court to grant this motion and permit intervention in this case.

### BACKGROUND

After Chinese state-affiliated business entities bought land around nineteen military bases and threatened our nation's energy sector, Federal Bureau of Investigation Director Christopher Wray noted that allowing the People's Republic of China to access our nation's "critical telecommunications, energy, water, and other infrastructure sectors" posed a threat to national security because "[t]he PRC [] has made it clear that . . . its plan is to land low blows against civilian

2

infrastructure to try to induce panic and break America's will to resist."[1]

Texas is uniquely susceptible to this threat with its purely intra-State grid and passed a law to protect its critical infrastructure. On June 7, 2021, Governor Greg Abbott signed the Lone Star Infrastructure Protection Act ("LSIPA") into law. Tex. Bus. & Com. Code Ann. §§ 117.001–.003; Tex. Gov't Code Ann. §§ 2275.0101–.0103. The LSIPA prohibits a business or governmental entity from entering into an agreement pertaining "to critical infrastructure in this state with a company," if, pursuant to the agreement, "the company would be granted direct or remote access to or control of critical infrastructure in this state" if the business or governmental "entity knows that the company is . . . owned by or the majority of stock or other ownership interest of the company is held or controlled by . . . individuals who are citizens of China, Iran, North Korea, Russia, or a designated country" or the entity "is owned or controlled by citizens of or is directly controlled by the government of China, Iran, North Korea, Russia, or a designated country," or alternatively, if the entity is "headquartered in China, Iran, North Korea, Russia, or a designated country." Tex. Bus. & Com. Code Ann. § 117.002; Tex. Gov't Code Ann. § 2275.0102.

GH America Energy, LLC ("Plaintiff") is a renewable energy project developer that is owned by a Chinese citizen and a subsidiary of a Chinese company. ECF No. 1 at 1. Plaintiff purchased over 140,000 acres of land near the Laughlin Air Force Base in South Texas, a training area for United States military personnel.[2] Of those holdings, 15,000 acres were devoted to constructing a wind farm located about 70 miles from the base. ECF No. 1 at 10. Federal law

---

[1] *Chinese Government Poses 'Broad and Unrelenting' Threat to U.S. Critical Infrastructure*, FBI *Director Says,* FBI (Apr. 18, 2024), https://www.fbi.gov/news/stories/chinese-government-poses-broad-and-unrelenting-threat-to-u-s-critical-infrastructure-fbi-director-says; Mary K. Jacob*, Map Shows Chinese-owned Farmland Next to 19 US Military Bases in 'Alarming' Threat to National Security: Experts*, New York Post (June 20, 2024, 1:52 PM), https://nypost.com/2024/06/20/us-news/chinese-owned-farmland-next-to-19-us-military-bases/; *see also* Katie Bo Lillis, *FBI Investigation Determined Chinese-Made Huawei Equipment Could Disrupt US Nuclear Arsenal Communications*, CNN (July 25, 2022, 4:12 PM), https://www.cnn.com/2022/07/23/politics/fbi-investigation-huawei-china-defense-department-communications-nuclear/index.html.

[2] John Hyatt, *Why A Secretive Chinese Billionaire Bought 140,000 Acres Of Land In Texas*, Forbes (Aug. 9, 2021, 7:10 AM), https://www.forbes.com/sites/johnhyatt/2021/08/09/why-a-secretive-chinese-billionaire-bought-140000-acres-of-land-in-texas.

requires an investigation and approval of any foreign investment in land near a military base, as well as foreign investment in the operation of critical infrastructure, and Plaintiff's wind turbine project passed federal approval. ECF No. 1 at 3-12.

After the passage of LSIPA, ERCOT sent a notice of cancellation for one of Plaintiff's three interconnection requests to generate power for the electric grid based on the fact that Plaintiff violated LSIPA's prohibition on Chinese ownership of critical infrastructure. *Id.* at 14-15. (Plaintiff sold the other two potential generation projects to third parties at a loss. *Id.*). Plaintiff now brings a claim for violation of: (1) the Supremacy Clause of the United States Constitution, which mandates that federal law preempts State law in the event of a conflict, *see* U.S. Const. art. VI, § 2; (2) the Dormant Commerce Clause, which is the implicit prohibition on States interfering with interstate commerce which Congress has the power to regulate, *see* U.S. Const. art. I, § 8, cl. 3; and (3) the Equal Protection Clause, which prohibits states from denying equal protection of the laws on the basis of race, ethnicity, or national origin, *see* U.S. Const. amd. XIV; 42 U.S.C. § 1983 (providing a statutory right of action against government officials violating the Equal Protection Clause). ECF No. 1 at 16-19. Plaintiff seeks to have this Court declare LSIPA unconstitutional, in addition to seeking declaratory and injunctive relief, compensatory damages, attorney's fees, and court costs. *Id.* at 20.

## STANDARD

Three key standards govern the intervention analysis in the instant action. Federal Rule of Civil Procedure 5, Federal Rule of Civil Procedure 24(a), and Federal Rule of Civil Procedure 24(b). Fed. R. Civ. P. 5; Fed. R. Civ. P. 24(a); Fed. R. Civ. P. 24(b). The U.S. Supreme Court's recent decision in *Berger* also makes clear that multiple state entities should be allowed to represent the state's interest in interpreting a state statute: "[W]here a State chooses to divide its sovereign authority among different officials and authorize their participation in a suit challenging state law, a full consideration of the State's practical interests may require the involvement of different voices with different perspectives." *See Berger*, 597 U.S. at 191; *see also Cameron v. EMW Women's*

*Surgical Ctr., P.S.C.*, 595 U.S. 267, 277 (2022); *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

***First***, Federal Rule of Civil Procedure 5.1(a) provides that

> A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute must promptly . . . serve the notice and paper on the Attorney General of the United States if a federal statute is questioned—or on the state attorney general if a state statute is questioned—either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose.

Fed. R. Civ. P. 5.1(a). The attorney general must be notified, and may then choose to intervene within 60 days of that notice or after the court certifies the challenge, whichever is earlier. *See id*. 5.1(b)-(c).

***Second***, Federal Rule of Civil Procedure 24(a) states that:

> On timely motion, the court must permit anyone to intervene who:
> (1) is given an unconditional right to intervene by federal statute; and
> (2) claims an interest related to the property or transaction which is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).

***Third***, in the alternative, Federal Rule of Civil Procedure 24(b) allows for permissive intervention. Under Federal Rule of Civil Procedure 24(b)(1):

> On timely motion, the court may permit anyone to intervene who:
> (A) is given a conditional right to intervene under federal statute; or
> (B) has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24(b)(1); *see also S.E.C. v. Stanford Int'l Bank, Ltd.*, 429 F. App'x 379, 382 (5th Cir. 2011). Further, Federal Rule of Civil Procedure 24(b)(2) provides that:

> On timely motion, a court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on
> (A) a statute or executive order administered by the officer or agency; or
> (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

Fed. R. Civ. P. 24(b)(2); *Perez v. Perry*, No. SA-11-CV-360, 2013 WL 5372882, at *1 (W.D. Tex. Sept. 24, 2013).

### ARGUMENT

I. **This Court should permit the Texas AG to intervene as of right pursuant to Federal Rules of Civil Procedure 5.1, 24(a)(1), and 24(a)(2).**

The Texas AG can intervene by right in the present case for three reasons.[3] ***First***, under Federal Rule of Civil Procedure 5.1, when the constitutionality of a state statute is questioned, the attorney general of that state must be notified, and may then choose to intervene within 60 days of that notice. ***Second***, Federal Rule of Civil Procedure 24(a)(1) provides that a party may intervene when that party has been given the right to intervene by statute, and in this case, 28 U.S.C. §2403(b) provides that a court shall permit the state to intervene when the constitutionality of a statute of that state is challenged. As such, the Texas AG has a right to intervene under Federal Rule of Civil Procedure 24(a)(1). ***Third***, the Texas AG may intervene by right under Federal Rule of Civil Procedure 24(a)(2), as the State of Texas has an interest in enforcing its own laws, which are the subject of the action at issue. Any one of these three reasons alone is sufficient to establish the Texas AG's right to intervene in the present case.

   **A. The Texas AG has a right to intervene under Federal Rule of Civil Procedure 5.1.**

Federal Rule of Civil Procedure 5.1 provides the Texas AG a clear *right to* intervene in this case, subject to no conditions. Under Federal Rule of Civil Procedure 5.1(a), a party who files a motion questioning the constitutionality of a state statute must notify that state's attorney general of this fact, when "the parties do not include the state, one of its agencies, or one of its officers or

---

[3] Intervening does not waive sovereign immunity, either from suit or liability. Although the Texas AG will become "subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality," 28 U.S.C. § 2403(b), he is not subject to liability for attorney's fees or other expenses or equitable relief. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (rejecting an award of attorney's fees against a State because "liability on the merits and responsibility for fees go hand in hand.").

employees in an official capacity." Fed. R. Civ. P. 5.1(a). In this case, the Texas AG did not receive notice,[4] presumably because there is some discrepancy between the courts as to whether or not ERCOT is a state agency. However, federal precedent that controls in this circuit states that "ERCOT is not an arm of Texas.[5]" *Matter of Entrust Energy, Inc.*, 101 F.4th 369, 383–84 (5th Cir. 2024); *but see CPS Energy v. Elec. Reliability Council of Texas*, 671 S.W.3d 605, 627 (Tex. 2023). The Texas AG therefore should have received notice about the aforementioned litigation. Furthermore, although notice is predicated on the absence of a state agency, Federal Rule of Civil Procedure 5.1(c), which grants a state attorney general the right to intervene, has no such condition. Fed. R. Civ. P. 5.1(c).

All the other factors are met. Federal Rule of Civil Procedure 5.1(c) states that the Texas AG's motion to intervene is timely filed "within 60 days after the [Rule 5.1(a)(2)] notice [to the Attorney General] is filed or after the court certifies the challenge, whichever is earlier." Fed. R. Civ. P. 5.1(c). Here, as stated, the Texas AG has received no notice of the challenge to the constitutionality of a state statute. Still, given that this motion is presented to the court within 60 days of the complaint being filed, it should be considered timely. *See* Fed. R. Civ. P. 5.1(c). Further, "the most important circumstance relating to timeliness is that the attorney general sought to intervene as soon as it became clear that the Commonwealth's interests would no longer be protected in the case." *Cameron v. EMW Women's Surgical Ctr., P.S.C.,* 595 U.S. 279-80 (2022). The Texas AG has done so here, and this motion should be considered timely. The final factor is a constitutional challenge to a state statue, which Plaintiff brings. The Texas AG therefore holds an unconditional right to intervene.

---

[4] This office has reviewed its own records as well as court records and has not obtained any documentation demonstrating that a Rule 5.1(a)(2) notice was ever sent. Such a lack of notice does not forfeit a timely asserted constitutional claim or defense. Fed. R. Civ. P. 5.1(d).

[5] The Texas AG believes that *Entrust Energy* was wrongly decided and reserves the right to challenge the opinion at the appropriate juncture. *See* Tex. Att'y Gen. Op. OR2021-13253 (2021); *CPS Energy*, 671 S.W.3d at 627 (noting that "the governing statutory authority demonstrates legislative intent to grant [ERCOT] the 'nature, purposes, and powers' of an 'arm of the State government.'").

### B. The Texas AG has an unconditional right to intervene under Federal Rule of Civil Procedure 24(a)(1).

Federal Rule of Civil Procedure 24(a) provides for intervention by a non-party as of right (1) when the party has been "given an unconditional right to intervene by federal statute; and (2) claims an interest related to the property or transaction which is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). The Texas AG has both an unconditional right to intervene under federal statute as well as an interest related to the subject of the action which is not adequately represented by other parties.

Here, a federal statute states that when the constitutionality of a State statute is in question in a federal court proceeding:

> [T]he court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, . . . and for argument on the question of constitutionality. The State shall . . . have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

28 U.S.C. §2403(b). The complaint in this case directly challenges the constitutionality of LSIPA, arguing that it violates the Supremacy Clause, the Dormant Commerce Clause, and the Equal Protection Clause of the United States Constitution. ECF No. 1 at 17-19.

That said, §2403(b)'s absolute right of the Texas AG to intervene is conditioned on whether "a State or any agency, officer, or employee thereof is not a party." 28 U.S.C. §2403(b). Here, neither the State of Texas is named as a party, nor is the Texas AG representing any of the named parties. The only named parties are ERCOT, its chief executive officer, and its board of directors; however, in *Entrust Energy*, the Fifth Circuit determined that ERCOT does not constitute an "arm of the state" for purposes of the Eleventh Amendment.[6] *Entrust Energy*, 101

---

[6] *Entrust Energy* considered whether ERCOT was entitled to sovereign immunity applying the six factors from *Clark v. Tarrant County*, 798 F.2d 736 (5th Cir. 1986). The Fifth Circuit found an even split, with the second factor—the source of the entity's funding—creating a tiebreaker weighing against ERCOT being an arm of the state entitled to immunity. *Entrust Energy*, 101 F.4th at 383.

F.4th at 383–384. The Fifth Circuit's decision weighs in favor of finding that the Texas AG has an unconditional right to intervene here to represent the interests of the State. The Texas AG meets the criteria for an intervention as of right.

### C. The Texas AG has an interest that is not adequately represented by other parties, authorizing intervention under Federal Rule of Civil Procedure 24(a)(2).

Even if this Court finds that Federal Rule of Civil Procedure 5.1(c) and 24(a)(1) do not apply in this instance, the Texas AG is still entitled to intervene as of right under Federal Rule of Civil Procedure 24(a)(2). The Texas AG has a unique interest in enforcing the statute whose constitutionality is being challenged in this case—the "transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). The Supreme Court has recognized that "no one questions that States possess a legitimate interest in enforcing their own statutes." *Berger*, 597 U.S. at 191 (cleaned up). The fact that ERCOT is already in the case is not dispositive.

In *Berger*, the Court concluded that State legislative leaders should be permitted to intervene in a case involving the constitutionality of a state election law even though the State's attorney general was already representing the Governor and the State Board of Elections. *See id.* The Court observed that "when a State chooses to allocate authority among different officials who do not answer to one another, different interests and perspectives, all important to the administration of State government, may emerge." *Id.* at 191. The Court's reasoning is worth quoting at some length:

> Appropriate respect for these realities suggests that federal courts should rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law. To hold otherwise would not only evince disrespect for a State's chosen means of diffusing its sovereign powers among various branches and officials. It would not only risk turning a deaf federal ear to voices the State has deemed crucial to understanding the full range of its interests. It would encourage plaintiffs to make strategic choices to control which state agents they will face across the aisle in federal court. It would tempt litigants to select as their defendants those individual officials they consider most sympathetic to their cause or most inclined to settle favorably and quickly. All of which would risk a hobbled litigation rather than a full and fair adversarial testing of the State's interests and arguments.

*Id.* at 191–92. Here, the same is true—ERCOT has a different State interest than the Texas AG's interest in defending the constitutionality of the statute, and both perspectives will be crucial to understanding the full range of Texas's interests.

The Court rightly noted that to do otherwise would create the risk that plaintiffs would defendant-shop:

> Instead and as we have seen, where a State chooses to divide its sovereign authority among different officials and authorize their participation in a suit challenging state law, a full consideration of the State's practical interests may require the involvement of different voices with different perspectives. To hold otherwise would risk allowing a private plaintiff to pick its preferred defendants and potentially silence those whom the State deems essential to a fair understanding of its interests.

*Id.* at 195.

Further, the fact that ERCOT is representing some aspect of a State interest in court does not necessarily mean that the Texas AG's interest is adequately represented. Indeed, the *Berger* Court went further, concluding that, if anything, a presumption should lie in favor of State intervention:

> We need only acknowledge that a presumption of adequate representation is inappropriate when a duly authorized state agent seeks to intervene to defend a state law. . . . Any presumption against intervention is especially inappropriate when wielded to displace a State's prerogative to select which agents may defend its laws and protect its interests. Normally, a State's chosen representatives should be greeted in federal court with respect, not adverse presumptions.

*Id.* at 197. The Texas AG, like the legislative representatives in *Berger*, "will focus on defending the law vigorously on the merits without an eye to crosscutting administrative concerns." *Id.* at 198. As in *Berger*, "the differences between [the Attorney General's] interest and the [ERCOT] Board's in this case demonstrate why state law empowers [the Attorney General] to participate in litigation over the validity of state legislation—alive as it is to the possibility that different branches of government may seek to vindicate different and valuable state interests." *Id.* at 198–99. This Court should permit the Texas AG to intervene as of right under Federal Rule of Civil Procedure 24(a)(2).

Under either Federal Rules of Civil Procedure 5.1, 24(a)(1), or Rule 24(a)(2), the Texas AG has demonstrated his right to intervene in this case.

II. **Even if the Texas AG lacks the clear statutory authority to intervene, this Court should grant permissive intervention, pursuant to Federal Rule of Civil Procedure 24(b)(1) or 24(b)(2).**

Additionally, the Texas AG has demonstrated grounds for permissive intervention. "Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (citation omitted). Intervention is permitted "where no one would be hurt and greater justice could be attained." *Sierra Club,* 18 F.3d at 1205 (citation omitted).

Federal Rule of Civil Procedure 24(b)(1)(A) provides that a court may permit anyone to intervene who "is given a conditional right to intervene by a federal statute." Fed. R. Civ. P. 24(b)(1)(A). Here, to the extent 28 U.S.C. § 2403(b) does not give the Texas AG an unconditional right to intervene, it gives Texas AG at a minimum a conditional right based on whether ERCOT is considered an arm of the state. As such, the Texas AG has a permissive right to intervene under Federal Rule of Civil Procedure 24(b)(1)(A).

Similarly, Federal Rule of Civil Procedure 24(b)(1)(B) provides that a court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Federal Rule of Civil Procedure 24(b)(1)(B). For all of the reasons the United States Supreme Court gave in the *Berger* case for allowing multiple State actors to intervene as of right to defend or interpret the same state statute, the Texas AG has also demonstrated the requisite commonality to intervene permissively.

Further, Federal Rule of Civil Procedure 24(b)(2) provides that a court may permit "a state governmental agency or officer to intervene if a party's claim or defense is based on (A) a statute or executive order administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order." Fed. R. Civ. P. 24(b)(2). Here, the Texas AG is tasked by state law with defending the legality of state statutes and

allowed by federal law to intervene to aid the Court in interpreting a state statute whose constitutionality has been questioned. *See* Tex. Const. art. IV, §22; Tex. Gov't Code §402.010; Fed. R. Civ. P. 5.1.

Even though Federal Rule of Civil Procedure 24(b)(2) intervention is permissive, the United States Supreme Court has recognized the "substantial legal interest that sounds in deeper constitutional considerations" when an attorney general seeks to defend a state statute. *Cameron*, 595 U.S. at 277 (2022). "Paramount among the States' retained sovereign powers is the power to enact and enforce any laws that do not conflict with federal law. Therefore, a State clearly has an interest in the continued enforceability of its own statutes, and a federal court must respect the place of the States in our federal system. This means that a State's opportunity to defend its laws in federal court should not be lightly cut off." *Id.* (cleaned up).

Most importantly, "[r]espect for State sovereignty must also take into account the authority of the State to structure its executive branch in such a way that empowers multiple officials to defend its sovereign interests in federal court." *Id.* The *Cameron* Court specifically noted that 28 U.S.C. § 2403(b), "even if . . . not directly applicable in this case . . . ***nevertheless reflects the weighty interest that a State has in protecting its own laws.***" *Id.* at 278 (emphasis added). As a result, the Texas AG should be permitted to intervene.

## CONCLUSION

Ken Paxton, the Attorney General of Texas, prays that this Unopposed Motion to Intervene be granted. A proposed Answer in Intervention is attached.

| | |
|---|---|
| Date: August 9, 2024 | Respectfully submitted. |
| | |
| **KEN PAXTON** | */s/Susanna Dokupil* |
| Attorney General | **SUSANNA DOKUPIL** |
| | Special Counsel |
| | Tex. State Bar No. 24034419 |
| **BRENT WEBSTER** | |
| First Assistant Attorney General | **KATHLEEN T. HUNKER** |
| | Special Counsel |
| | Tex. State Bar No. 24118415 |
| **RALPH MOLINA** | |
| Deputy Attorney General for Legal Strategy | **GARRETT GREENE** |
| | Special Counsel |
| | Tex. State Bar No. 24096217 |
| **RYAN D. WALTERS** | |
| Chief, Special Litigation Division | **MUNERA AL-FUHAID** |
| | Special Counsel |
| | Tex. State Bar No. 24094501 |
| | |
| | **JACOB PRZADA** |
| | Special Counsel |
| | Tex. State Bar No.24125371 |
| | |
| | OFFICE OF THE ATTORNEY GENERAL OF TEXAS |
| | Special Litigation Division |
| | P.O. Box 12548, Capitol Station |
| | Austin, Texas 78711-2548 |
| | Tel.: (512) 463-2100 |
| | Susanna.Dokupil@oag.texas.gov |
| | Kathleen.Hunker@oag.texas.gov |
| | Garrett.Greene@oag.texas.gov |
| | Munera.Al-fuhaid@oag.texas.gov |
| | Jacob.Przada@oag.texas.gov |
| | |
| | **COUNSEL FOR INTERVENOR-DEFENDANT KEN PAXTON, ATTORNEY GENERAL OF TEXAS** |

**CERTIFICATE OF CONFERENCE**

I hereby certify that on August 8, 2024, I conferred with counsel, via email, regarding this Motion. Counsel indicated that their clients are unopposed.

*/s/Susanna Dokupil*
SUSANNA DOKUPIL

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on August 9, 2024 and that all counsel of record were served by CM/ECF.

*/s/Susanna Dokupil*
SUSANNA DOKUPIL