FILED
October 10, 2024
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____PG_____
DEPUTY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| GH AMERICA ENERGY LLC<br>    *Plaintiff*,<br><br>v.<br><br>DOUGLAS FOHN, in his official capacity as Assistant General Counsel of Electric Reliability Council of Texas, Inc. ("ERCOT"); HOLLY HEINRICH, in her official capacity as Legal/Regulatory Counsel of ERCOT; PABLO VEGAS, in his official capacity as Chief Executive Officer of ERCOT; and PAUL FOSTER, BILL FLORES, CARLOS AGUILAR, LINDA CAPUANO, JULIE ENGLAND, ROBERT FLEXON, PEGGY HEEG, and JOHN SWAINSON, in their official capacities as members of the Board of Directors of ERCOT.<br>    *Defendants*,<br><br>ATTORNEY GENERAL KEN PAXTON,<br>    *Intervenor-Defendant*. | Case No. 1:24-CV-00648 |

## DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendants Douglas Fohn, Holly Heinrich, Pablo Vegas, Paul Foster, Bill Flores, Carlos Aguilar, Linda Capuano, Julie England, Robert Flexon, Peggy Heeg, and John Swainson (together, "Defendants"), file their reply to Plaintiff's Response to Defendants' Motion to Dismiss First Amended Complaint.

## TABLE OF CONTENTS

Page

I. GHAE's preemption claims should be dismissed. ................................................................1

    A. LSIPA is not impliedly preempted. ............................................................................1

        1. GHAE pleads nothing to overcome the presumption against preemption. .....2

        2. Federal law expressly disclaims preemption of concurrent State grid regulation. ..................................................................................................2

        3. CFIUS and LSIPA involve different fields. ...................................................3

        4. GHAE has not identified any conflict with federal objectives. .....................4

        5. The foreign affairs preemption doctrine is inapplicable. ...............................7

    B. GHAE failed to plead a federal right underlying its preemption claim. ....................8

    C. GHAE fails to plead a valid *Ex Parte Young* claim. ..................................................9

II. GHAE's equal protection claim fails. ................................................................................10

    A. GHAE has not pled a plausible equal protection claim. ..........................................10

    B. GHAE concedes that it has not—and cannot—plead a *Monell* claim. ....................13

III. GHAE cannot defend the claims against Ms. Heinrich. ....................................................14

IV. GHAE has not plead a plausible claim for damages. ........................................................15

PRAYER ........................................................................................................................................15

CERTIFICATE OF SERVICE .....................................................................................................16

**I.    GHAE's preemption claims should be dismissed.**

**A.    LSIPA is not impliedly preempted.**

The Supreme Court has made clear that the "[i]mplied preemption analysis does not justify a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives," as "such an endeavor would undercut the principle that it is Congress rather than the courts that pre-empts state law." *Chamber of Com. v. Whiting*, 563 U.S. 582, 607 (2011) (cleaned up). Accordingly, the Supreme Court's "precedents establish that **a high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act**." (cleaned up) (emphasis added).

In determining whether the "high threshold" of implied preemption is overcome, the Court's analysis "must be guided by two cornerstones of . . . pre-emption jurisprudence." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). "First, the purpose of Congress is the ultimate touchstone in every pre-emption case." *Id.* (cleaned up). And "[s]econd, in all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (cleaned up). Because this "clear and manifest" Congressional intent inquiry is, at bottom, a question of statutory interpretation, preemption claims are routinely resolved on a Rule 12(b)(6) motion.[1] *E.g.*, *Nat'l Press Photographers Ass'n v. McCraw*,

---

[1] GHAE misunderstands Defendants' distinction between the substance of GHAE's pleadings (which Defendants address "on the merits" in their motion, Mot. to Dism. FAC (Dkt. 26) at 13), versus the procedural vehicle (i.e., §1983 and *Ex Parte Young*) by which GHAE brings its claims. Accordingly, GHAE argues that Defendants improperly go beyond the pleadings in their preemption arguments (which Defendants do not do). Resp. (Dkt. 27) at 19. As noted, however, the preemption analysis is a question of statutory interpretation; thus, these claims are properly resolved under Rule 12(b)(6). *E.g.*, *McCraw*, 90 F.4th 770, 796 (5th Cir. 2024). Moreover, the Fifth Circuit has referred to these types of Rule 12(b)(6) dismissals as a dismissal "on the merits." *See, e.g.*, *Gallegos–Hernandez v. United States*, 688 F.3d 190, 193 (5th Cir. 2012) ("We ultimately AFFIRM the district court's judgment dismissing Gallegos's petition *on its merits* for failure to state a claim for the denial of any constitutional right.") (emphasis added).

504 F. Supp. 3d 568 (W.D. Tex. 2020) (Pitman, J.), *aff'd* regarding Rule 12(b) dismissal of preemption claims, 90 F.4th 770 (5th Cir. 2024).

### 1. GHAE pleads nothing to overcome the presumption against preemption.

While the bar for implied preemption is, in all instances, a high one, that bar is even higher here. There is a "presumption against finding pre-emption of state law in areas traditionally regulated by the States." *California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989). Because GHAE's claims directly implicate "one of the most important of the functions traditionally associated with the police power of the States"—utility regulation—that presumption against preemption holds true here. *ERCOT v. Just Energy Tex., L.P. (In re Just Energy, Inc.)*, 57 F.4th 241, 252 (5th Cir. 2023). Yet GHAE's complaint and response do nothing to address this presumption.

### 2. Federal law expressly disclaims preemption of concurrent State grid regulation.

Not only does GHAE fail to acknowledge Texas's longstanding and presumptively not preempted constitutional interest in regulating its own grid—it wrongly contends that there is no "CFIUS or related federal provision that contemplates some concurrent state regulation" in this area. Resp. (Dkt. 27) at 21. As Defendants previously highlighted, however, Mot. to Dism. FAC (Dkt. 26) at 18, CFIUS expressly does not "alter[] nor affect[] any other authority, process, [or] regulation . . . provided by or established under any other provision of Federal law," 50 U.S.C. § 4565(i)—including the Federal Power Act, which in turn disclaims preemption of state grid regulations, FPA §§ 824(a), 824o(i)(3) ("Nothing in this section shall be construed to preempt any authority of any State to take action to ensure the safety, adequacy, and reliability of electric service within that State . . . ."). GHAE conspicuously fails to acknowledge this preemption disclaimer, which all but forecloses GHAE's claims.

2

### 3. CFIUS and LSIPA involve different fields.

"Although the Supreme Court has recognized field preemption claims, it has indicated courts should hesitate to infer field preemption unless plaintiffs show 'that complete ouster of state power including state power to promulgate laws not in conflict with federal laws was 'the clear and manifest purpose of Congress.''" *City of El Cenizo v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018) (quoting *DeCanas v. Bica*, 424 U.S. 351, 357 (1976)). To establish its field preemption claim, then, GHAE was required to show "that federal law evinces the **clear and manifest purpose of Congress to preclude even complementary state legislation on the same subject**." *Id.* at 178 (cleaned up) (emphasis added).

GHAE has not, and cannot, point to anything in the CFIUS statute that demonstrates an intent—let alone a "clear and manifest" one—to prevent Texas from regulating its own intrastate grid. On this point, GHAE simply re-tells the history leading to the current CFIUS statute, and then relies exclusively on CFIUS's definitions of "covered transactions," which GHAE claims create a "pervasive" and "comprehensive" "framework of federal regulation" that leaves no room for LSIPA. Resp. at 20 (cleaned up). But, as previously detailed, Mot. to Dism. FAC (Dkt. 26) at 14–15, those provisions are the opposite of pervasive and comprehensive—they establish only a narrow set of transactions that CFIUS may review for certain statutorily prescribed national security risks.

Even if it could be said that CFIUS constitutes a pervasive and exclusive statutory scheme (it does not), GHAE's claims still fail on their face for the simple reason that CFIUS and LSIPA "involve[] different fields." *See El Cenzino*, 890 F.3d at 177–78. CFIUS looks exclusively at the effects of a "covered transaction" "on the *national security of the United States*," 50 U.S.C. §§ 4565(b)(1)(A), (f) (emphasis added), and may only take action to mitigate identified *national* security risks, *id.* § 4565(l); *see also* Resp. at 19 (acknowledging same). LSIPA, by contrast, regulates only *Texas's* own critical infrastructure, including its unique intrastate grid. These are, on the face of the statutes, different fields, and any attempt to "define the field broadly enough to include both [LSIPA] and federal legislation"

must be rejected, as Supreme Court and Circuit precedent make clear that "the relevant field should be defined narrowly." *El Cenzino*, 890 F.3d at 177–78; *De Canas*, 424 U.S. at 360 n.8 ("Every Act of Congress occupies some field, but we must know the boundaries of that field before we can say that it has precluded a state from the exercise of any power reserved to it by the Constitution.").

The authority cited by GHAE in its response also illustrates this point. GHAE cites *Arizona v. United States*, 567 U.S. 387, 399 (2012), for the proposition that the CFIUS regime is so pervasive as to occupy the field, Resp. at 20–21. But *Arizona* illustrates just how narrow field preemption must be understood. In that case, the Supreme Court struck down several provisions of Arizona law. But only one (directly regulating alien registration) was struck down on field preemption grounds because—despite the federal government's dominance in immigration matters—that was the only issue with respect to which Congress had created a pervasive regulatory scheme. Thus, in *Whiting*, the Court upheld state laws revoking business licenses of companies that employed undocumented aliens. *Whiting*, 563 U.S. at 587; *see also Garcia*, 589 U.S. at 210 (holding that the Immigration and Nationality Act "does not create a comprehensive and unified system regarding the information that a State may require employees to provide"). In contrast to the INA—which, despite creating a "comprehensive federal statutory scheme for regulation of immigration and naturalization," *Whiting*, 563 U.S. at 587, does not exclusively occupy the field on all immigration-related matters—the CFIUS statute merely creates a largely voluntary system under which certain foreign investments are reviewed for certain types of national security concerns.

### 4.  GHAE has not identified any conflict with federal objectives.

GHAE's claim of conflict preemption must also be dismissed. As with its field preemption claim, GHAE was required to demonstrate Congress's "clear and manifest" intent to preempt traditional state utility regulation. *See Deanda v. Becerra*, 96 F.4th 750, 765 (5th Cir. 2024) (in rejecting a conflict preemption claim, recognizing that "in areas of traditional state regulation like family law,

4

Congress must overcome the presumption-against-preemption by clearly and manifestly showing its intent to preempt."). Here again, GHAE wholly fails to demonstrate such clear and manifest Congressional intent to "overcome the presumption-against-preemption." *Id.*

GHAE's asserted conflicts are manufactured ones, unmoored from any statutory text. GHAE first claims that LSIPA is in direct conflict with the alleged "safe harbor" provision in 31 C.F.R. § 800.508(d), which GHAE claims has vested it with a "federal right to 'proceed' with its renewable energy projects in southwest Texas," Resp. (Dkt. 27) at 16. That safe harbor provision, however, merely insulates GHAE from further *CFIUS review*—it does not, as GHAE suggests, give GHAE an unfettered right to "proceed" with its Blue Star Solar Project, entirely exempt from any further federal or state regulatory scrutiny.[2]

GHAE also claims that LSIPA conflicts with federal objectives by making "Texas . . . off limits for certain foreign investors," and thereby "diminish[ing] the federal government's 'capacity to bargain for the benefits of access to the entire national economy.'" Resp. (Dkt. 27) at 26 (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 381 (2000)). There is no merit to this argument. In the first place, contrary to GHAE's hyperbolic mischaracterization, LSIPA does not make Texas "off limits" to foreign investors—it narrowly prohibits control of or direct access to State *critical infrastructure* by companies that are *majority-owned* by citizens of certain countries. Second, as applied here, LSIPA has nothing to do with, and has no impact on, the national economy—a fact that GHAE recognized when it voluntarily nonsuited its Commerce Clause claims, after Defendants pointed out that Texas regulating access to its *intra*state grid creates no burden on *inter*state commerce. *See* Mot. to Dism. Orig. Compl. (Dkt. 13) at 24–25.[3]

---

[2] GHAE has never alleged that it even submitted the Blue Star Solar project for review or that any conclusion has been reached as to that project.

[3] Defendants further distinguish *Crosby* (upon which GHAE relies in making this argument) in their Motion to Dismiss. *See* Mot. to Dism. FAC (Dkt. 26) at 16–17.

5

The heavily relied-upon Letter of Assurance agreement GHAE attaches to its response also entirely belies its claims of conflict preemption. Nothing in that LOA vests GHAE with an inviolable "federal right to 'proceed'" with the Blue Star Solar Project, free from any State regulation. Resp. (Dkt. 27) at Exs. A, B. Rather—in recognition of the fact that the "establishment and the operation of wind and other renewable energy sources **near military installations** may have potential impact on U.S. national security interests"—GHAE agreed to notify the Department of Defense before acquiring an interest in renewable energy projects so that the DOD may have the opportunity to object to such projects "if there is a confirmed **national security concern**." *Id.* at Ex. B, §§ 2(a), 4 (emphasis added). In other words, the CFIUS concern (as reflected both in the LOA and GHAE's Amended Complaint) is siting of generation equipment near military bases and flight paths—not the security of Texas's grid. These different federal and State objectives are not in conflict.

This distinction also explains why *Crosby* is inapplicable. *See* Mot. To Dism. FAC (Dkt. 26) at 16–17. The state law at issue in *Crosby* was a set of sanctions designed to impose "economic pressure" against the Burmese regime—*i.e.*, to engage in foreign policy—and the law thus limited the *President's* ability to engage in foreign policy because it meant "the President ha[d] less to offer" in negotiations with the regime "and less economic and diplomatic leverage as a consequence." *Crosby*, 530 U.S. at 376–77. But here, LSIPA does not seek to influence any foreign nation; instead, it seeks to secure the State's electrical grid. And nothing about LSIPA limits the federal government's ability to fully and adequately protect *national* security through CFIUS. Put simply, LSIPA is about security, not sanctions, and *Crosby*'s reasoning does not apply.

More critically, GHAE's suggestion that if it passes CFIUS review "all regulatory action" is concluded, Resp. (Dkt. 27) at 5, therefore making further regulatory action conflicting and precluded, would lead to absurd results. Were that true, GHAE would have no obligation to follow, e.g., local building codes, or even grid regulations. There is nothing in the LOA, CFIUS statute, or the Supreme

6

Court's preemption precedent to support such a dangerous proposition. In fact, the opposite is true. GHAE's interpretation of the alleged safe harbor provision renders meaningless the CFIUS provision by which Congress explicitly stated no other federal law is to be affected, 50 U.S.C. § 4565(i)—including the Federal Power Act, and its express disclaimer of preemption of state grid regulations, FPA §§ 824(a), 824o(i)(3).

### 5. The foreign affairs preemption doctrine is inapplicable.

GHAE's invocation of the so-called "dormant foreign affairs preemption doctrine," Resp. (Dkt. 27) at 23, also fails on its face. As an initial matter, GHAE misunderstands the purported doctrine, which rests on a belief that the Constitution *itself* preempts the entire field of foreign affairs—even if the political branches have not implemented any express policy. *See Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1072 (2012) (en banc). But as GHAE's discussion demonstrates, its preemption arguments are based on "[t]he federal government's implementation of CFIUS and the related statutory and regulatory regime." Resp. (Dkt. 27) at 22. That is a straightforward field preemption argument that turns on statutes and regulations, not a freestanding theory of *constitutional* preemption.

But more significantly, the doctrine (to the extent it still exists[4]) does not apply to laws "within the realm of traditional state responsibilities." *See Dunbar v. Seger-Thomschitz*, 615 F.3d 574 (5th Cir. 2010); *see also Movsesian*, 670 F.3d at 1074 (the doctrine applies only when the state law "has no serious claim to be addressing a traditional state responsibility"). And as Defendants have explained, LSIPA's regulation of Texas's electrical grid is in the heartland of the State's traditional powers. *See* Mot. to

---

[4] GHAE contends that the Supreme Court "drew upon" the doctrine in *American Insurance Association v. Garamendi*, 539 U.S. 396 (2003). *See* Resp. (Dkt. 27) at 23. But GHAE notably does not say the Court *applied* the doctrine in *Garamendi*—and with good reason. *See Movsesian*, 670 F.3d at 1073 (noting that *Garamendi* "ultimately concluded" the relevant state statute "was preempted because of a direct conflict with *express* federal policy" (emphasis added)); *see also* Mot. to Dism. FAC (Dkt. 26) at 19 n.22 (noting the Supreme Court has not *applied* the doctrine since the 1960s).

7

Dism. FAC (Dkt. 26) at 18–19 (citing *Just Energy*, 57 F.4th at 252). Thus, the doctrine does not apply even on its own terms.

Summarily, under any theory of preemption, GHAE's Supremacy Clause claims fail. LSIPA is a proper exercise of the State's long-established and well-recognized police powers, *Just Energy*, 57 F.4th at 252, protecting the security of Texas's intrastate grid and, thereby, protecting Texans' lives and livelihoods. Accordingly, GHAE's preemption claims must be dismissed.

### B. GHAE failed to plead a federal right underlying its preemption claim.

Even if GHAE had pleaded a plausible preemption claim (it did not), GHAE's claim must still be dismissed because it has no federal right to underpin its preemption claims. Despite expressly pleading that its § 1983 preemption claim arose directly under the Supremacy Clause, FAC (Dkt. 19) ¶ 80, GHAE now concedes that clause gives it no right protected by § 1983 action, Resp. (Dkt. 27) at 15. Instead, GHAE now asserts a supposed safe-harbor right under CFIUS. *Id.* But GHAE failed to plead that it has such a right, nor has it pleaded a deprivation thereof. GHAE's § 1983 preemption claim should therefore be dismissed.[5]

With respect to Defendants' argument that the CFIUS statute reflects an intent to vest enforcement authority for CFIUS exclusively in the executive branch, GHAE asserts that *one* of the statutes Defendants cited applies only to the Defense Production Act, not CFIUS. Resp. 16. In fact, § 4556 broadly applies to Chapter 55 of Title 50, which indisputably includes the CFIUS statute. *E.g.*, 50 U.S.C. § 4565. In any event, Defendants relied foremost on § 4565—the same statute GHAE now cites—because it denies parties like GHAE any judicial-review rights under CFIUS and likewise vests

---

[5] As Defendants explain above, this alleged right to be free from any and all other regulations is also nonexistent. *See supra,* § I.A.4.

8

enforcement authority exclusively in the executive branch. Mot. to Dism. FAC (Dkt. 26) at 10. Under these circumstances, no *Young* claim is available.[6]

### C. GHAE fails to plead a valid *Ex Parte Young* claim.

First, GHAE does not deny that relief under *Ex Parte Young* is available only against *State* officials, as opposed to officials of lesser governmental units. *See* Mot. to Dism. FAC (Dkt. 26) at 11. To get around this, GHAE asserts that ERCOT is an arm of the State under *Texas* law, making Defendants "state officers." Resp. (Dkt. 27) at 17. But GHAE fails to show that it is ERCOT's state-law, rather than federal-law, status that governs whether its officials are proper *Young* defendants. That *Ex Parte Young* is an "exception to Eleventh Amendment sovereign immunity," *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024), strongly suggests that ERCOT's federal-law status answers the question of whether its officials are state officers that may be sued under *Ex Parte Young*. If ERCOT is not an arm of the state for Eleventh Amendment immunity purposes, it is hard to imagine its officials are state officers for purposes of an exception to Eleventh Amendment sovereign immunity. *Phillips v. ERCOT (In re Entrust Energy, Inc.)*, 101 F.4th 369, 387 (5th Cir. 2024) (ERCOT is not an arm of the State for Eleventh Amendment immunity purposes).[7]

Further, with respect to Ms. Heinrich and Mr. Fohn, GHAE fails to point to any allegation that they have "a particular duty to enforce" LSIPA. *Mi Familia*, 105 F.4th at 325 (cleaned up); *see* Mot. to Dism. FAC (Dkt. 26) at 12. The claims against them therefore fail.

As for the ERCOT Board Members, GHAE fails to respond on the merits to ERCOT's argument that they have no duty to enforce LSIPA. *See* Mot. to Dism. FAC (Dkt. 26) at 11–12. Instead,

---

[6] GHAE makes no attempt to show it has any rights to vindicate under any statute administered by OFAC, *see* Mot. to Dism. FAC (Dkt. 26) at 17, or CISA, which is mentioned for the first time in GHAE's response.

[7] As set forth in Defendants' Motion, *see* Motion to Dism. FAC (Dkt. 26) at 30, Defendants disagree with the Fifth Circuit's determination that ERCOT is not an arm of the State for Eleventh Amendment purposes.

9

GHAE asserts that this Court cannot consider ERCOT's Board Policies and Procedures. Resp. (Dkt. 27) at 18 n.9. But ERCOT's policies and procedures have the force of state law, *see* PURA § 39.151(j), and this Court may take judicial notice of them. Alternatively, Defendants properly cited this evidence in support of their argument that GHAE lacks standing to sue the Board Members. *See* Mot. to Dism. FAC (Dkt. 26) at 12.

Finally, GHAE does not defend its attempt to seek relief on behalf of unidentified, non-party affiliates, *see* Mot. to Dism. FAC (Dkt. 26) at 13, and it acknowledges it is not entitled to retrospective relief, *see* Resp. (Dkt. 27) at 18. At a minimum, those claims must be dismissed.

## II.    GHAE's equal protection claim fails.

### A.    GHAE has not pled a plausible equal protection claim.[8]

GHAE defends its equal protection claim solely on the basis that LSIPA allegedly discriminates based on "alienage and national origin." Resp. (Dkt. 27) at 28.[9] But national origin only refers to "the particular country in which one was born." *United States v. Osorto*, 995 F.3d 801, 822 (11th Cir. 2021); *see also Jalil v. Campbell*, 590 F.2d 1120, 1123 (D.C. Cir. 1978) ("The term 'national origin,' however, does not include 'aliens,' but merely refers to "the country from which (a person's) ancestors came." (quoting *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973))). Alienage does not refer to having a foreign citizenship. It refers instead to the status of "*not* being a citizen of the United States." *Osorto*,

---

[8] Here again, Defendants address GHAE's equal protection claims "on its merits," distinguishing between the substance of GHAE's pleadings versus the procedural vehicle (i.e., §1983 and *Ex Parte Young*) by which GHAE brings its claims. *See* Mot. to Dism. FAC (Dkt. 26) at 24; *see supra* note 1. Both the substantive and procedural grounds raised in Defendants' Motion are properly resolved on a Rule 12(b)(6) motion. Substantively, both (1) the appropriate level of constitutional scrutiny, and (2) whether there exists any "hypothe[tical] . . . legitimate purpose to support" LSIPA are questions for the Court to decide. *Hines v. Quillivan*, 982 F.3d 266, 273 (5th Cir. 2020); *Gallegos–Hernandez*, 688 F.3d at 195. For this reason, equal protection claims—like preemption claims—are routinely dismissed at the pleadings stage. *See, e.g., Hines*, 982 F.3d at 276; *Gallegos–Hernandez*, 688 F.3d at 196; *Tesla, Inc. v. Louisiana Auto. Dealers Assoc.*, 113 F.4th 511, 531 (5th Cir. 2024) (all affirming Rule 12(b)(6) dismissals of equal protection claims).

[9] GHAE has abandoned its allegation that LSIPA discriminates based on race and ethnicity. *See* FAC (Dkt. 19) ¶ 79.

995 F.3d at 822 (emphasis added); *see also United States v. Nnanna*, 7 F.3d 420, 422 (5th Cir. 1993) (noting that "'alienage' and 'national origin' are not synonymous."); 8 U.S.C. § 1101(a)(3) (defining "alien" as "any person not a citizen or national of the United States").

GHAE provides no explanation of its assertion that LSIPA discriminates on the basis of national origin or alienage. LSIPA is in fact neutral as to both: LSIPA applies when its criteria are met regardless of a person's national origin, or whether he is a U.S. citizen. Mot. to Dism. FAC (Dkt. 26) at 26. That is, LSIPA prohibits U.S. citizens and noncitizens alike from granting control of or direct or remote access to ERCOT's grid to the governments of Iran, China, North Korea, and Russia, companies controlled by those governments, or companies headquartered in or controlled by citizens of those countries (whether or not they are also U.S. citizens). Because LSIPA does not use any suspect classification, LSIPA is subject to rational-basis review.

As important, GHAE ignores its failure to plead that it even *possesses* any nationality or national origin, and it makes no argument that a Texas LLC is even capable of having alienage or a national origin for equal protection purposes. *See* Mot. to Dism. FAC (Dkt. 26) at 27. Instead, GHAE concedes that it is asserting an equal protection claim on behalf of its non-citizen, non-resident owners, arguing that it has the right "to be free from a statute that *discriminates against its owners*." Resp. (Dkt. 27) at 28 n.19 (emphasis added). GHAE offers no authority to support its argument, which:

> [R]uns headlong into two bedrock principles of American law. *First*, it is long settled as a matter of American constitutional law that **foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution** . . . *Second*, it is long settled as a matter of American corporate law that separately incorporated organizations are separate legal units with distinct legal rights and obligations.

*Agency for Int'l Dev. v. Alliance for Open Society Int'l, Inc.*, 591 U.S. 430, 433, 435 (2020) ("*AID*") (emphasis added).

GHAE does not dispute that its owners, as foreign citizens outside the United States, have no constitutional rights. *Id.* at 435 ("As foreign organizations operating abroad, plaintiffs' foreign affiliates

11

possess no rights under the First Amendment."); Resp. (Dkt. 27) at 28 n.19. There can be no unconstitutional discrimination *against GHAE's owners* who have no constitutional rights to begin with. Had Xinjiang Guanghui Industry Investment (Group) Company, Ltd. or Sun Guangxin filed suit from afar alleging unconstitutional discrimination against them, their claims would be dismissed because the U.S. Supreme "Court has not allowed foreign citizens outside the United States or such U.S. territory to assert rights under the U.S. Constitution." *AID*, 590 U.S. at 434. Under GHAE's argument, the President of Iran could create and control a domestic Texas company, and use that entity as a vessel to assert constitutional rights in the U.S. to compel direct access to Texas's grid. That argument must fail on its face. Whatever rights GHAE may or may not have, it certainly "cannot export [its] own [constitutional] rights" to its non-citizen, non-resident owners. *AID*, 591 U.S. at 438; *see also Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 474 (5th Cir. 2013) (holding that litigants generally may not assert another person's legal rights).

The "substantial body of law cited" by GHAE, Resp. (Dkt. 27) at 29, does nothing to save GHAE's equal protection claims. Two of GHAE's cited cases did not even involve an equal protection claim based on alienage.[10] And the two that did include alienage claims involved *resident* aliens.[11] GHAE has no answer to the substantial precedent holding that, as to alienage, strict scrutiny applies only to classifications affecting *resident* aliens (which GHAE's owners are not), and only to policies that

---

[10] *Shaw v. Reno*, 509 U.S. 630, 643 (1993) (applying heightened review standard in racial gerrymandering case); *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 438-439 (1985) (reversing Fifth Circuit and applying rational basis review after Fifth Circuit "determine[ed] that mental retardation was a quasi-suspect classification and that it should assess the validity of the ordinance under intermediate-level scrutiny.").

[11] *Bernal v. Fainter*, 467, U.S. 216, 221 (1984) (*resident* alien plaintiff's equal-protection claim to become a notary public reviewed under heightened scrutiny, but recognizing heightened review is "out of place" when the restriction involves important elective and non-elective positions within government); *Graham v. Richardson*, 403 U.S. 365, 372-376 (1971) (applying strict scrutiny to state statute that denied welfare benefits to *resident* aliens).

regulate outside critical and unique areas of State importance (which LSIPA does not). *See* Mot. to Dism. FAC (Dkt. 26) at 27–28.

Finally, GHAE asserts that LSIPA "fail[s] rational-basis scrutiny" because "national security is not a valid *state* interest." Resp. (Dkt. 27) at 29. But the state interest here is not national security at large—it is the security and stability of Texas's "uniquely vulnerable" and "exeptional[ly] complex[]" intrastate, state-regulated electric grid. *See* Mot. to Dism. FAC (Dkt. 26) at 28–29 (citing *Texas v. Env't Prot. Agency*, 829 F.3d 405, 432–33 (5th Cir. 2016)). And that is indisputably one of the most important functions of state police power. *See Just Energy*, 57 F.4th at 252. LSIPA survives rational-basis review.

### B. GHAE concedes that it has not—and cannot—plead a *Monell* claim.

Outside of the fact that LSIPA easily passes rational-basis review, *Hines*, 982 F.3d at 273, GHAE's § 1983 equal protection claim must be dismissed because GHAE has failed to plead a viable *Monell* claim.[12] GHAE suggests that *Monell* is inapplicable to its claims because ERCOT "is not a municipality" and is instead "an arm of the State of Texas." Resp. (Dkt. 27) at 30. GHAE is confused.[13] *Monell* is not limited to claims against municipalities. *E.g.*, *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (collecting cases applying *Monell* to corporations); *accord Martinez v. Nueces County*, 71 F.4th 385, 391 (5th Cir. 2023).[14] Because GHAE's official-capacity claims amount to claims against ERCOT the entity, *Monell* applies. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). And under *Monell*, the

---

[12] For the same reasons, GHAE' re-assertion of its preemption claim as a § 1983 claim fails. *See* FAC (Dkt. 19) ¶¶ 76, 80

[13] GHAE's defense of its § 1983 claims by arguing Defendants are State officials is puzzling since state officials acting in their official capacities are not "persons" under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983."). And *Monell* has been applied to state officials sued in their official capacities. *See Reynolds v. Giuliani*, 506 F.3d 183, 191-193 (2nd Cir. 2007).

[14] Texas law regards counties as arms of the State, while federal law does not. *See Hoff v. Nueces County*, 153 S.W.3d 45, 49–50 (Tex. 2004). Yet *Monell* obviously applies to a § 1983 suit against a county (and its officers in their official capacities). The same is true of ERCOT.

13

fact that Texas law regards ERCOT as an arm of the State that acts exclusively on the State's behalf requires dismissal of GHAE's § 1983 claims. *See* Mot. to Dism. FAC (Dkt. 26) at 19–24.

GHAE is wrong that *Monell* does not apply to injunction claims. Defendants readily acknowledged that *one* of their arguments—that ERCOT is not a § 1983 "person"—applies only to GHAE's damages claims. *See id.* at 23–24. But Defendants' other two *Monell*-based arguments apply equally to GHAE's § 1983 damages and injunction claims: GHAE failed to plead that any Defendant was a policymaker with respect to LSIPA (it pleads the opposite—that the Texas Legislature was the policymaker, *see* Mot. to Dism. FAC (Dkt. 26) at 21); and even if GHAE had done so, Defendants cannot be liable for enforcing mandatory state law. *See id.* at 19–23; *Daves v. Dallas County*, 22 F.4th 522, 532–34 (5th Cir. 2022) (en banc) (applying *Monell* to injunctive-relief claim); *see also Reynolds*, 506 F.3d at 191 ("*Monell* draws no distinction between injunctive and other forms of relief."). GHAE has no response, and its equal protection claims must be dismissed.

### III. GHAE cannot defend the claims against Ms. Heinrich.

GHAE sues Holly Heinrich in her official capacity—a capacity that does not exist because she ceased working at ERCOT before she was sued. GHAE's only response is to assert that ERCOT cannot rely on Ms. Heinrich's declaration establishing that fact. Resp. (Dkt. 27) at 18 n.10. But contrary to GHAE's suggestion otherwise, *see id.* at 1 n.1, ERCOT specifically asserted that GHAE lacks standing to sue Ms. Heinrich, Mot. to Dism. FAC (Dkt. 26) at 7–8, and Ms. Heinrich's declaration was properly filed in support.[15] The claims against her should be dismissed.

---

[15] Defendants' Motion asserted a lack of standing and redressability as to Defendants and GHAE's unnamed affiliates for whom GHAE seeks relief here, *see* Mot. to Dism. FAC (Dkt. 26) at 7–8, 12–13, 20, 24, as well as an immunity claim, *id.* at 30. GHAE chose not to address these jurisdictional arguments, instead pretending they were not made. Resp. (Dkt. 27) at 1, n.1.

**IV.   GHAE has not plead a plausible claim for damages.**

Because GHAE sues Defendants only in their official capacities, it was required to plead liability under *Monell*. Mot. to Dism. FAC (Dkt. 26) at 19–20. GHAE entirely failed to do so and, therefore, its § 1983 damages claims must be dismissed. GHAE concedes as much, acknowledging that, because it sued Defendants exclusively in their official capacities, its damages claim "may require amendment." Resp. (Dkt. 27) at 30. The Court should not allow such an amendment, particularly given that (1) GHAE already had an opportunity to amend its complaint to address the highlighted deficiencies in its claims against the individual ERCOT Board members (including with respect to the capacity in which they were sued), *see* Mot. to Dism. Orig. Compl. (Dkt. 13) at 8 & n.9; and (2) GHAE failed to properly request leave to amend. *See Langan v. Abbott*, 518 F. Supp. 3d 948, 954–55 (W.D. Tex. 2021) (Pitman, J.) (dismissing Plaintiffs' claims and "declin[ing] to *sua sponte* permit Plaintiffs to amend their complaint a second time" after Plaintiffs failed to properly request leave to amend)*; see also Goldstein v. MCI WorldCom*, 340 F.3d 238, 254–55 (5th Cir. 2003) (affirming district court's denial of leave to amend where "as an afterthought, the plaintiffs tacked on a general curative amendment request to the end of their response in opposition to the defendants' motion to dismiss"); *see also Douglas v. DePhillips*, 740 Fed. Appx. 403, 406 (5th Cir. 2018) (holding that a statement "[a]t the end of [plaintiff's] opposition to the motion to dismiss . . . that they 'should be given an opportunity to amend to further state any claims considered deficient' and 'to plead further' [its] claims" were "insufficient to constitute a request for leave to amend under Rule 15(a).").

## PRAYER

For the reasons set forth above, Defendants respectfully request that the Court grant their Motion to Dismiss and dismiss all of the claims asserted in GHAE's First Amended Complaint. Respectfully submitted,

15

**WINSTEAD PC**

/s/ *Elliot Clark*
Elliot Clark
State Bar No. 24012428
eclark@winstead.com
D. Blake Wilson
State Bar No. 24090711
bwilson@winstead.com
Elin Isenhower
State Bar No. 24104206
eisenhower@winstead.com
600 W. 5th, Suite 900
Austin, Texas 78701
Telephone: (512) 370-2800
Facsimile: (512) 370-2850

**ATTORNEYS FOR DEFENDANTS IN THEIR OFFICAL CAPACITIES**

**ALEXANDER DUBOSE & JEFFERSON LLP**

/s/ *Wallace B. Jefferson*
Wallace B. Jefferson
State Bar No. 00000019
wjefferson@adjtlaw.com
Rachel A. Ekery
State Bar No. 00787424
rekery@adjtlaw.com
100 Congress Avenue, Suite 1450
Austin, Texas 78701-2709
Telephone: (512) 482-9300
Facsimile: (512) 482-9303

**ATTORNEYS FOR DEFENDANTS IN THEIR OFFICIAL CAPACITIES**

**COOPER & KIRK PLLC**

/s/ *David. H. Thompson*
David H. Thompson *(pro hac vice)*
D.C. Bar No. 450503
John D. Ramer *(pro hac vice)*
D. C. Bar No. 90002236
1523 New Hampshire Ave., N.W.
Washington D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
dthompson@cooperkirk.com
jramer@cooperkirk.com

**ATTORNEYS FOR DEFENDANTS IN THEIR OFFICAL CAPACITIES**

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2024, the foregoing document was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Elliot Clark*
Elliot Clark